**The below described is SIGNED.**



**Dated: April 24, 2009**    _William J. Thurman_ _____

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**BEDROCK MARKETING, LLC.,**<br><br>    Debtor. | **Bankruptcy No. 08-20308**<br><br>**Chapter 7** |
| **GARY E. JUBBER,** Chapter 7 Bankruptcy<br>Trustee of Bedrock Marketing, LLC and<br>Enlightened Management, LLC,<br><br>        Plaintiff,<br>v.<br><br>**WESTON WADE SLEATER,**<br><br>        Defendant. | **Adversary No. 08-02077** |

### MEMORANDUM DECISION

The matter before the Court is Gary E. Jubber's, the chapter 7 trustee (the "Trustee"),

Motion for Summary Judgment on alleged personal obligations of the Defendant and a Motion to

Strike two declarations submitted by Weston Wade Sleater ("Sleater" or "Defendant").   Rulings

on Summary Judgment are of common occurrence in this and other courts.  Due to the nature of

the review required which involved an analysis of the rules of evidence and the nature of alleged

liability due to the manner in which the Defendant signed certain obligations, the Court has

elected to go into greater detail here.   The Court conducted a hearing on these matters on

February 18, 2009.  The Trustee moved for summary judgment on two promissory notes (the

"Notes" or "Note").  In his motion, the Trustee asserts that the Notes are presently in default and

due for payment, and that the Defendant is personally liable for the amounts due on the Notes.

Additionally, the Trustee seeks to strike the sworn and unsworn declarations[1] ("Declarations") of

the Defendant on the grounds that the statements constitute inadmissible hearsay, parol evidence,

lack personal knowledge, and are comprised of inappropriate legal conclusions.  The Defendant

objects to summary judgment on the grounds that the Notes are invalid for lack of consideration,

and that the Declarations qualify for various exceptions and should, therefore, not be stricken.

At the conclusion of the hearing, the Court took the matters under advisement.  Based

upon the Motion, the Response, and the affidavits, as well as the parties respective oral

arguments, the Court issues the following Memorandum Decision, which will constitute its

findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil

Procedure.[2]  The court issued its earlier oral ruling and this Memorandum Decision is consistent

with that ruling.  Further, an order based on the oral ruling has been entered.

I.      **JURISDICTION AND VENUE**

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§

---

[1] Unsworn Declaration of Def. in Supp. of Opp. to Mot. for Summ. J.; Declaration Under
Oath of Def. in Supp. of Opp. to Mot. for Summ. J..

[2] Rule 52 of the Federal Rules of Civil Procedure is made applicable to this proceeding
by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

1334(b) and 157(a).  Venue is proper in the Central Division of the District of Utah under 28

U.S.C. § 1409.  Notice is appropriate in all respects.

## II.    BACKGROUND

The following facts are undisputed.  The Debtor, Bedrock Marketing, LLC (the "Debtor"

or "Bedrock") filed its chapter 7 bankruptcy case on January 18, 2008.  Gary Jubber is the

chapter 7 Trustee in the bankruptcy proceedings of both Bedrock and Enlightened Management,

LLC ("Enlightened").  At the time of the filing, Bedrock and Enlightened each held Notes that

were in default, and this action is an effort on their part to collect on the outstanding balance of

the Notes.

Beginning in June 2006, Bedrock began advancing funds to Atlas Capital, LLC ("Atlas

Capital").  Atlas Capital's sole member and manager was Mr. Sleater.  In January 2007,

Enlightened also began advancing funds to Atlas Capital, and as of March 15, 2007, Atlas

Capital had received funds from Bedrock and Enlightened totaling in excess of $4,000,000.  The

two Notes were executed on March 15, 2007, and memorialized the terms of repayment of the

funds advanced to Atlas Capital.  Each Note identified Mr. Sleater numerous times as the

"maker."  The signature block of each Note is underscored with the caption "Weston Wade

Sleater & Atlas Marketing Group, L.C.," yet each signature block contains only the signature of

Mr. Sleater, and there is no indication that Mr. Sleater was signing the Notes in any official

capacity.  Additionally, each Note contains a personal guarantee clause, which Mr. Sleater also

signed as an individual.  Neither Note makes any mention of Atlas Capital in any respect.  One

Note sets forth the terms for the repayment of $3,910,388.71 to Bedrock ("Bedrock Note").  The

other Note outlines the terms for the repayment of $470,000 to be made to Enlightened

3

("Enlightened Note").  Other than the differing amounts to be paid, the Notes appear identical in their terms.

Each Note provided for the repayment of the principal amount together with interest at the rate of 48% per annum.  The Notes also set forth terms regarding the payment of accrued interest and principal, and required monthly payments on the accrued interest to be made on the fifteenth day of each month for the preceding calendar month.[3]  Each Note also contained the following language regarding the payment of the principal balance: "The entire unpaid principal balance and accrued, but unpaid, interest and other charges evidenced by this note shall be due and payable in full upon completion of the project being financed by the funds secured by this note; or at any time either evidenced in writing by both parties, or within three (3) years of the execution of this note."[4]

After March 15, 2007, total payments in the amount of $1,764,862.70 had been made on the Bedrock Note but no additional payments have been made on the Note since October 19, 2007.  No payments were ever made on the Enlightened Note, and between March 15, 2007 and September of 2007 an additional $355,000 was advanced by Enlightened to Atlas Capital.  At the present time both Notes are in default.

The Court is presently being asked to enforce these two Notes currently in default.  This claim for enforcement was first brought in the Third District Court, Salt Lake County, and was subsequently removed to this Court by the Trustee following Bedrock's and Enlightened's

---

[3] Pl.'s Mem. Supp. Summ. J. Ex. A at 1; Ex. B at 1.  The Bedrock Note required payment of $204,000.32 for the month of March, and $156,415.55 for every month thereafter.  Payments on the Enlightened Note were to be $12,993.56 for the month of March, and $18,800 for every month thereafter commencing on May 15, 2007.

[4] Id.

4

bankruptcy filings.  The Trustee is seeking to recover the amounts due on the Notes from Mr. Sleater.

The Plaintiff filed the present Motion for Summary Judgment, along with supporting memorandum and affidavit, on December 1, 2008.  Mr. Sleater filed an objection to the Motion and Declarations in support of his objection on December 29, 2008.  The Plaintiff filed a Motion to Strike the Declarations, and the Court has agreed to consider that motion together with the Plaintiff's Motion for Summary Judgment.

## III.    ANALYSIS

There are two primary issues before the Court.  First, whether the Declarations are admissible, and second, whether summary judgment regarding the liability on the Notes is appropriate.  The Court will address each of these issues in turn.

### A.    The Legal Standard for Summary Judgment

A motion for summary judgment will be granted if the pleadings, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[5]  In reviewing the record for genuine issues of material fact, the pleadings and documentary evidence are construed liberally in favor of the nonmoving party.[6]  When the nonmoving party bears the burden of proof at trial on a dispositive issue, and a moving party's motion for summary judgment is properly made, the nonmoving party may not rest upon allegations or denials in its pleading, but must set forth specific facts showing there is a

---

[5] FED. R. BANKR. P. 7056(c); See Davidson v. America Online, Inc., 337 F.3d 1179, 1182 (10th Cir. 2003); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

[6] Cole v. Ruidoso Mun. Schools,  43 F.3d 1373, 1379 (10th Cir. 1994).

genuine issue for trial.[7]  If the nonmoving party's evidence is "merely colorable, or is not

significantly probative, summary judgment may be granted."[8]

    The Plaintiff argues that summary judgment is appropriate because Mr. Sleater received

money from Bedrock and Enlightened, as evidenced by the Notes, the amounts owed to Bedrock

and Enlightened as of March 15, 2007, were accurately indicated on the Notes, and there are no

remaining issues of material fact.  In addition, summary judgment in the Plaintiff's favor is

appropriate because Mr. Sleater is personally liable for the Notes, and both Notes are currently in

default.  The Plaintiff also argued, in its initial motion, that Mr. Sleater was unjustly enriched

when Enlightened advanced $355,000 to Atlas Capital after March 15, 2007, but has since

withdrawn this claim.  In short, the Plaintiff concludes that, (1) the Notes are valid against Mr.

Sleater, (2) they are currently in default, and (3) that damages have been incurred in the amounts

indicated in the Plaintiff's motion.[9]

    The Defendant does not dispute that the Notes are in default and that the amount due is

accurately indicated in Plaintiff's Motion for Summary Judgment.  The Defendant, however,

contends that the Notes are not enforceable against him.  Specifically, Atlas Capital was the

maker of the Notes, not the Defendant.  He further argues that the Notes are not valid because

there was insufficient consideration for both the Notes, and for the personal guarantee of the

Notes that the Defendant allegedly provided.

---

[7] FED R. BANKR. P. 7056(e)(2); See also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (stating that a proper summary judgment motion may be opposed by depositions, answers to interrogatories, and admissions on file, with the exception of the pleadings themselves).

[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

[9] Pl.'s Mem. Supp. Summ. J.. The balance due with interest as of November 30, 2008 was $7,697,079.71 on the Bedrock Note, and $1,724,276.96 on the Enlightened Note.

Based on the foregoing, the Court finds that the facts relevant to the present matters are not in dispute.  The Defendant has not contested the facts set forth in the affidavit of John H. Curtis.  Although Mr. Sleater has filed his own declarations, which are addressed herein for admissibility, the statements in those Declarations do not contest the material facts.  Instead, the parties' dispute in this case relates solely to  the legal effect of those facts.  Under these circumstances summary judgment is appropriate.[10]

B.    Motion to Strike the Declarations

Under Rule 7056 of the Federal Rules of Bankruptcy Procedure, an affidavit opposing a Motion for Summary Judgment "must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show that the affiant is competent to testify to the matters stated."[11]  Once a motion for summary judgment has been properly made and supported, "an opposing party may not rely merely on allegations or denials in its own pleadings."[12] Furthermore, "conclusory and self-serving affidavits are not sufficient," to create a genuine dispute.[13]

The Defendant has provided two Declarations, one sworn and the other unsworn, both of which the Plaintiff seeks to strike.  Because the Declarations appear to be substantively identical, the paragraphs referenced herein will apply to both the sworn and unsworn Declarations.

---

[10] Morris v. Jack B. Muir Irrevocable Trust (In re Muir), 89 B.R. 157, 159-60 (Bankr. D. Kan. 1988).

[11] FED. R. BANKR. P. 7056(e)(1).

[12] FED. R. BANKR. P. 7056(e)(2).

[13]  In re Loper, 329 B.R. 704, 707 (B.A.P. 10th Cir. 2005).

7

Plaintiff seeks to strike the Declarations on the grounds that they consist of inadmissible hearsay, parol evidence, legal conclusions, and statements made without personal knowledge.

       1.    *Hearsay*

     Pursuant to Federal Rule of Evidence 802, "hearsay" is not admissible evidence,[14] and as a result, any hearsay statements made in the Declarations cannot be used to oppose a motion for summary judgment.[15]  The Court finds that some of the statements made in the Declarations consist partially or entirely of hearsay as that term is defined in the Federal Rule of Evidence 801©, and unless a valid exception to the hearsay rule applies, the statements should be excluded.  The Defendant argues that at least one or more hearsay exceptions apply under rules 807, 804(b)(3), and/or 801(d)(2)(D).[16]  The Court will address each of these rules and the Defendant's arguments in turn.

     Rule 807, known as the residual hearsay exception rule, provides that a statement qualifying for this exception must be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts."[17]  The hearsay statements at issue here are those provided by Mr. Sleater, as allegedly having been made by Rex Wheeler.  However, there is no evidence that the Defendant has made any, let alone reasonable, efforts to procure a deposition or statement of Rex Wheeler.  Furthermore, such deposition of the declarant would surely be more probative on the point for which the Defendant's hearsay

---

[14] FED. R. EVID. 802.

[15] FED. R. BANKR. P. 7056(e)(1).

[16] FED. R. EVID. 807; FED. R. EVID. 804(b)(3); FED. R. EVID. 801(d)(2)(D).

[17] FED. R. EVID. 807(B).

statements are being offered.  As a result, the residual hearsay exception rule does not apply here.

Rule 804(b)(3) applies when the declarant is unavailable and makes a statement that, at the time of its making, is against his/her own pecuniary or proprietary interests.[18]  This exception does not apply in the present case because the Defendant has failed to show that the declarant is unavailable, or that the statements were against the declarant's interest at the time they were made.

Rule 801(d)(2)(D) provides the most promising argument for the Defendant.  This provision applies to statements made by a party opponent, and renders such statements as non-hearsay.[19]  The fact that this proceeding is being held in the Bankruptcy Court and the claim is being pursued by the Trustee adds some interesting nuances to the application of this rule.  If the case were still in the state court, and the claims were being brought by Bedrock and Enlightened, the statements of Rex Wheeler[20] would seemingly be non-hearsay under 801(d)(2). Since the cases were removed to the Bankruptcy Court, however, and are being prosecuted by the Trustee, the question becomes one of privity and successor in interest.

As noted in the Hon. Barry Russell Bankruptcy Evidence Manual, a trustee is not bound by statements of agents of the debtor.[21]  This is because the trustee is not the debtor, and, although the trustee is a successor in interest, Rule 801(d)(2)(D) does not include statements of a

---

[18] FED. R. EVID. 804(b)(3).

[19] FED. R. EVID. 801(d)(2)(D).

[20] Rex Wheeler is the owner and manager of both Bedrock and Enlightened.

[21] BARRY RUSSEL, BANKRUPTCY EVIDENCE MANUAL § 801.16 (2007-2008 ed.); See Calhoun v. Baylor, 646 F.2d 1158, 1162 (6th Cir. 1981).

predecessor in interest as statements by a party opponent.[22]  Therefore, the agents of the debtor

are not the agents of the trustee, and statements made by the debtor's agents are not admissible

as against the Trustee.  Additionally, as noted by the court in Calhoun v. Baylor,[23] statements of

a debtor's agent could not be used against the creditors of the estate of a debtor under Rule

801(d)(2), and, therefore, they should not be used against the trustee who represents the interests

of the estate.[24]  Although statements by a person in privity with a party were admissible at

common law, the Seventh Circuit Court of Appeals explained that privity relationships are not

enumerated by Rule 801(d)(2), and the admissibility of statements made by those in privity

should be held against the standard of the residual exception of Rule 807, not Rule 801(d)(2).[25]

The Court finds the reasoning of the Sixth and the Seventh Circuits persuasive and elects to

follow it.

Accordingly, the hearsay statements offered by Mr. Sleater do not qualify under the

residual exception standard of Rule 807.  Additionally, the statements are also inadmissible

under Rule 801(d)(2)(D).  Therefore, the following paragraphs in the Declarations are stricken as

hearsay: ¶¶ 3, 7, 8, 9, 16, and 22.[26]

---

[22] Id.

[23] 646 F.2d 1158, 1162 (6th Cir. 1981).

[24] Id.

[25] Huff v. Motor Corp., 609 F.2d 286, 290-91 (7th Cir. 1979).

[26] It should also be Noted that even if the above mentioned paragraphs were deemed
admissible as non-hearsay or under one of the discussed hearsay exceptions, all of the statements
are still subject to the parol evidence rule discussed below.

2.    *Inadmissible Legal Conclusions and Lack of Personal Knowledge*

The Plaintiff also moves to strike portions of the Declarations because they contain

inadmissible legal conclusions.  The Trustee points out that such statements are inappropriate in

an affidavit opposing summary judgment, which may only properly contain admissible facts

upon which the declarant is competent to testify.[27]

The Court determines that the Defendant has failed to establish that he has any legal

expertise upon which his statements of legal conclusion might be competently made.  As a result,

the following paragraphs are stricken because they constitute inadmissible legal conclusions:  ¶¶

9, 10, 16, 20, 22, 23, and 24.

Affidavits must also be made based on personal knowledge.[28]  The Court determines that

the following paragraphs in Declarations are not based on personal knowledge, and are stricken:

¶¶ 10, 16, 23, and 24.

3.    *Applicability of the Parol Evidence Rule*

The Trustee argues that many of the statements in the Declarations are excluded by the

parol evidence rule.  The parol evidence rule operates to exclude evidence of the parties' prior or

contemporaneous conversations, representations, or statements offered for the purpose of

varying or adding to the terms of an integrated contract.[29]  The Court determines that because

there is no ambiguity in the language or the intent of the Notes,[30] the following paragraphs are

---

[27] FED. R. BANKR. P. 7056(e).

[28] Id.

[29] Richins Drilling, Inc. v. Golf Servs. Group, Inc., 189 P.3d 1280, 1281 (Utah App. 2008).

[30] See full discussion of ambiguity of the Notes below.

barred by the parol evidence rule, and will, therefore, be stricken:  ¶¶ 3, 7, 8, 9, 16, 21, 22, and

24.  Finally, the Court concludes that the inadmissible portions of the Declarations are so

interwoven and inextricably combined with the few admissible portions that, it would be very

difficult, if not impossible, to separate them.  Therefore, all of the statements in the Declarations

are stricken, except for the following paragraphs:  ¶¶ 1, 2, 4, 5, 6, 12, 13, 14, 15, 18, and 19.

     C.    <u>Liability on the Notes</u>

        1.    *The Bedrock and Enlightened Notes Constitute Negotiable Instruments*

     As a threshold matter, this Court must consider the Defendant's argument that the Notes

are not negotiable instruments.

     Section 70A-3-104 of the Utah Code defines negotiable instruments as "(1) . . . an

unconditional promise or order to pay a fixed amount of money, with or without interest or other

charges described in the promise or order, if it, (a) is payable to bearer or to order at the time it is

issued or first comes into possession of a holder; (b) is payable on demand or at a definite time;

and © does not state any other undertaking or instruction by the person promising or ordering

payment to do any act in addition to the payment of money. . . ."[31]  The Utah Supreme Court

stated in <u>Angelo Calfo v. D.C. Stewart Co.</u>,[32] that "to be negotiable under § 3-104(1) . . . an

instrument must meet four criteria.  Specifically, it must (i) evidence a signature by the maker or

drawer, (ii) contain an unconditional promise or order to pay a sum certain in money, (iii) be

payable on demand or at a definite time, and (iv) be payable to order or to bearer."[33]

---

[31]  Utah Code Ann. § 70A-3-104 (2008).

[32] 717 P.2d 697 (Utah 1986).

[33] <u>Id</u>. at 699.

Both the Bedrock and Enlightened Notes designate Mr. Sleater as the maker, and are payable to Bedrock and Enlightened respectively, or to successor holder.[34]  As to whether the Notes are conditional/contingent, and are payable on demand or at a definite time, the Defendant argued that neither Note is actually a negotiable instrument because it fails to satisfy parts (ii) and (iii) of the <u>Calfo</u> analysis, and, therefore, general contract rules should apply instead. The Defendant contends that under the general contract law principle of consideration, past consideration is not sufficient consideration.  As such, antecedent debt of Atlas Capital cannot be sufficient consideration for either Not, or the personal guarantees, and the Notes are, therefore, unenforceable.  In support of his argument, the Defendant points to the reasoning in <u>Calfo</u>, which determined that the instrument in question was not a negotiable instrument because it contained language that the instrument would be "due in full upon final closing between . . . seller and . . . buyers, which shall be on or before May 1, 1980, when buyers exercise their option to purchase the Astro Motel. . . ."[35]  The court in that case found that this language made the instrument contingent upon a conditional event, i.e. the closing between seller and buyers, and because the holder of the note was not in control of this contingency, the promise to pay was conditional or indefinite on its face, and, therefore, failed to meet the requirements of a negotiable instrument.[36]

The Defendant attempts to analogize the clause in <u>Calfo</u> with the language in the Notes at issue in this case.  Specifically, he points to the language in the Bedrock and Enlightened Notes that state, "[t]he entire unpaid principal balance . . . shall be due and payable in full upon the

---

[34] Pl.'s Mem. Supp. Summ. J. Ex. A at 1; Ex. B at 1.

[35] <u>Calfo</u>, 717 P.2d at 700.

[36] <u>Id</u>.

13

completion of the project being financed by the funds secured by this note, or at any time either

evidenced in writing by both parties, or within three (3) years of the execution of this note."[37]

The Defendant argues that since the Notes are due "upon completion of the project" this renders

them conditional and indefinite.

The Court disagrees, and finds that such a comparison with the promissory note in <u>Calfo</u>

is inappropriate.  First, although the completion of the project is a conditional event possibly

beyond the control of the holder of the Notes, the amount due is not contingent upon that event

alone.  Indeed, the payment of the amounts due on the Notes are not solely contingent on the

completion of the project.  In the event "the project" is never completed, the full amount of the

Notes is still due "at any time either evidenced in writing by both parties, or within three(3) years

of the execution of this note."[38]  The addition of this language renders the Notes unconditional on

their face, and the person holding the Notes is on notice that at the end of three years from the

date of execution the Notes will be due in full.  The instrument in <u>Calfo</u> does not contain such a

backstop.  For example, if the closing between the buyers and seller in <u>Calfo</u> never occurred no

money would be due.  Whereas here there are two independent events that trigger the payment of

the funds.  The amounts due on the Notes at issue here are due within three years regardless of

whether or not "the project" is completed, and the Notes being due "upon completion of the

project being financed by the funds" merely provides one possible time when the full balance

may be demanded.

Furthermore, contrary to the Defendant's argument, the Court determines that the Notes

---

[37] Pl.'s Mem. Supp. Summ. J. Ex. A at 1; Ex. B at 1.

[38] <u>Id</u>.

are due at a definite time.  An instrument is payable at a definite time if it is payable on a fixed

date, on elapse of as specified period of time after acceptance, or at some time readily

ascertainable at the time the instrument is issued.[39]  Both the Bedrock and Enlightened Notes are

due within three years of the date of execution.  This constitutes an "elapse of a specified period

of time after acceptance," and one that is "readily ascertainable" at the time the Notes were

issued.[40]  Therefore, the Notes satisfy the third requirement of a negotiable instrument because

they are due on demand or at a definite time.

     Contrary to the Defendant's argument, the <u>Calfo</u> instrument is distinguishable from the

Bedrock and Enlightened Notes in that the date evidenced on the <u>Calfo</u> instrument indicated only

when the option to purchase would expire, not the date upon which the note would be due, as is

the case here.

     Based on the foregoing, the Court concludes that the Bedrock and Enlightened Notes

satisfy the four requirements of a negotiable instrument – they are unconditional, promises to

pay a fixed amount, payable to the bearer at a definite time.  Since the Notes are negotiable

instruments, they are governed by chapter 3 of title 70A of the Utah Code, rather than general

contract law.

        2.    *Sleater is the "Maker" of the Notes*

     Under Utah law, "maker" means a person who signs or is identified in a note as a person

undertaking to pay.[41]  Therefore, the maker of a note is obligated to pay according to the terms of

---

[39] UTAH CODE ANN. § 70A-3-108 (2008).

[40] Pl.'s Mem. Supp. Summ. J. Ex. A at 1; Ex. B at 1.  The Notes were issued/executed on
March 15, 2007, and accordingly, the full amount will be due on or before March 15, 2010.

[41] UTAH CODE ANN. § 70A-3-103(1)(e) (2008).

the note.  Utah case law also states that unless a document clearly indicates that a person is signing it in his/her official capacity, he/she is personally liable on the contract.[42]

> This rule has been codified in § 70A-3-402 of the Utah Code, which provides that if the form of the signature does not show unambiguously that the signature is made in a representative capacity or the represented person is not identified in the instrument, the representative is liable on the instrument to a holder in due course that took the instrument without notice that the representative was not intended to be liable on the instrument. With respect to any other person, the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument.[43]

Although "Atlas Marketing Group, L.C." is listed on the signature block, the Defendant's signature does not "show unambiguously that the signature is made in a representative capacity." The Defendant signed only his name on the Notes.  He did not sign the company name, write his affiliation with the company, or indicate in any way his title or position within the company that might lead one to believe that he was authorized and, in fact, signed the Notes in such a capacity. Therefore, the Court determines that under Utah law the Defendant is the maker of the Notes and is personally obligated on those Notes.

The Defendant argues that the Court should consider extrinsic evidence that the parties' intent was not to make him personally liable on the Notes.  In essence, the Defendant is asking the Court to admit parol evidence to interpret the Notes.  Parol evidence, however, may only be introduced if a contract is ambiguous or if it is not fully integrated.[44]  Additionally, "[i]t is only when an ambiguity exists which cannot be reconciled by an objective and reasonable

---

[42]Anderson v. Gardner, 647 P.2d 3, 4 (Utah 1982) (holding that a preprinted signature block listing "Mr. Jay Gardner-KMOR RADIO" and signed by Gardner without any indication the signature was being done in any official capacity left him personally liable).

[43] UTAH CODE ANN. § 70A-3-402 (2008); See also U.C.C. § 3-402 cmt. 2 (2002).

[44] Tangren Family Trust v. Tangren, 182 P.3d 326 (Utah 2008).

16

interpretation of the contract as a whole that resort may be had to the use of extrinsic

evidence."[45]  The Notes in this case do not appear to contain an integration clause, but there is

a presumption of integration that may be rebutted by evidence of forgery, fraud, duress,

illegality, absence of consideration, or mutual mistake.[46]  No such evidence has been presented in

this case.

When considering the Notes in their entirety, they are not ambiguous on their face.  The

Defendant is listed on pages 1, 4 and 5 of each Note as the maker, and he signed his name in the

signature block designated for the maker.[47]  Also, as was the case in Anderson v. Gardner, when

taken in isolation, the fact that "Atlas Marketing L.C." was printed on the signature block is

somewhat ambiguous, but when viewed in light of the other provisions in the note the clear

intent of the parties is apparent.[48]

Defendant further argues that if he is found to be the maker of the Notes, ambiguity arises

from the fact that he also personally guaranteed the Notes.  The Defendant explains that one can

only guarantee the obligation of another.  Therefore, if he is the maker and primary obligor, his

guarantee creates ambiguity and legal absurdity because, by definition, one cannot guarantee his

own obligation.  In support, the Defendant cites to several Utah cases for the proposition that

ambiguity regarding the intent of contracting parties creates an issue of fact allowing parol

---

[45] Anderson, 647 P.2d at 4 (quoting Utah Valley Bank v. Tanner, 636 P.2d 1060, 1062 (Utah 1981)).

[46] In re Armstrong, 292 B.R. 678, 689 (B.A.P. 10th Cir. 2003).

[47] Pl.'s Mem. Supp. Summ. J. Ex. A at 1, 5; Ex. B at 1, 5.

[48] Anderson, 647 P.2d at 4.

evidence as to the parties' intentions to be admitted.[49]  The rule set forth in Daines v. Vincent

requires a judge to consider all the relevant evidence presented, even that of contrary

interpretations, and that the interpretations be reasonably supported by the language of the

contract.[50]  It is not intended, however, that a judge allow surrounding circumstances to create

ambiguity the language of the note does not permit.[51]

As discussed above, the Court does not find the language of the Notes or the intent of the

parties to be ambiguous.  The language in the Notes clearly sets forth the obligations of the

parties, the intent of the parties is clear on the face of the Notes, and, therefore, consideration of

extrinsic evidence and contrary interpretation is inappropriate.  The clear intent shows that Mr.

Sleater was to be personally liable on the Notes.  The fact that Mr. Sleater is listed as the

personal guarantor and the maker does not nullify this intent.  In fact, it appears to bolster the

argument that the parties intended for him to be personally liable.  The personal guarantee does

not void the clear intent of the parties, nor does it create ambiguity in that regard.  If anything, it

is merely a duplicative manifestation of that intent.

The Defendant's argument that extrinsic evidence should be allowed because of a mutual

mistake is also not persuasive.  The Utah Supreme Court requires clear and convincing evidence

---

[49] Daines v. Vincent, 190 P.3d 1269 (Utah 2008) (quoting Ward v. Intermountain
Farmers Ass'n, 907 P.2d 264, 268 (Utah 1995)).

[50] Id. at 1276.

[51] Id.

of mutual mistake to allow extrinsic evidence to modify a contract.[52]  Here, the Defendant, at

most, has shown that there might have been a unilateral mistake on his part in signing the Notes.

A unilateral mistake by the Defendant is insufficient to set aside or modify the Notes.

      D.    <u>Consideration for the Notes</u>

The Defendant argues that regardless of whether or not he was the maker of the Notes,

since past consideration is not sufficient consideration the antecedent debt of Atlas Capital

cannot serve as sufficient consideration for the Notes.  He argues that this renders the Notes

unenforceable.  The Defendant is correct in his assertion that, as a general rule and in the

absence of a statute validating past consideration, past consideration is insufficient to support a

promise.[53]  However, there is such a statute validating past consideration for negotiable

instruments in Utah.[54]  Under § 70A-3-303(1)(c)(2008) of the Utah Code, "[a]n instrument is

issued or transferred for value if . . . the instrument is issued or signed as payment of, or as

security for, an antecedent claim against any person, whether or not the claim is due."[55]

The notes following the corresponding § 3-303 of the Uniform Commercial Code explain

that subsection (1)(c) provides "the holder takes for value if the instrument is taken in payment

of or as security for an antecedent claim," regardless of whom the claim is against, and "even

though there is no extension of time or other concession."[56]

---

[52] <u>Neely v. Kelsh</u>, 600 P.2d 979, 981 (Utah 1979).

[53] 17A Am. Jur. 2d *Contracts* § 152.

[54] Utah Code Ann. § 70A-3-303(1)(c) (2008).

[55] <u>Id</u>.

[56] U.C.C. §3-303 cmt. 4 (2002).

The Court must determine whether the money advanced by Bedrock and Enlightened created an "antecedent claim" upon which the Notes could be given for value.  Although no prior Utah case law has directly interpreted whether "antecedent claim" in § 70A-3-303 of the Utah Code is equivalent to an "antecedent debt," the treatment of these two terms as synonymous is supported by the Utah Supreme Court's treatment of the terms "claim" and "debt" in other contexts.[57]

The Defendant argues that even if past consideration were valid, the funds were given directly to Atlas Capital and not to him personally, and should not constitute valid consideration given to him.  There is no dispute that all of the money was advanced to Atlas Capital, and not the defendant personally.  The Utah Supreme Court, however, has adopted the principle that consideration may be given to the promisor or to some other person.[58]  The principle underlying this rule provides that, so long as the consideration is bargained for and given in exchange for the promise, an enforceable contract is created.[59]  Additionally, if a guarantee is executed contemporaneously with a note, the consideration supporting the primary obligation also supports the guarantee, and there is no need for separate consideration for the guarantee.[60]

Based on the foregoing and the Court's application of Utah law, the Court determines that both Notes were supported by valid consideration and are, therefore, enforceable against the

---

[57] Wilcox v. CSX Corporation, 70 P.3d 85, 93 (Utah 2003) (the Utah Supreme Court, using congress' broad view of the term "claim" in the Bankruptcy Code, interpreted the term "debt" as found in Utah Code Ann. § 31A-27-321(1)(a) to be synonymous with the term "claim.").

[58] Continental Ill. Nat. Bank v. Allen, 811 P.2d 168, 173 (Utah 1991).

[59] Restatement (Second) of Contracts §71 cmt. (e) (1981).

[60] Bray Lines Inc. v. Utah Carriers, Inc., 739 P.2d 1115, 1117 (Utah Ct. App. 1987).

20

Defendant as the maker of the Notes.  The Notes were transferred for value because they were

issued as security for antecedent debt, and although the funds were not received by the defendant

personally, personal benefit is not necessary for a note to be enforceable against its maker.

## IV.    CONCLUSION

Accordingly, the Court concludes that the Plaintiff's Motion for Summary Judgment and

Motion to Strike are granted.  A separate order has been entered.

_____END OF DOCUMENT_____



oo00–00oo

Service of the foregoing **MEMORANDUM DECISION** will be effected through the

Bankruptcy Noticing Center to each party listed below:

Bedrock Marketing, LLC.

Enlightened Management, LLC.

Gary E. Jubber
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
        *Chapter 7 Trustee, Plaintiff*

Ronald S. George, P.A.
389 N. Mink Creek Road
Pocatello, ID 83204
        *Counsel for Weston Wade Sleater*